Mike Acosta STONE, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–89–00289–CR.

Court of Appeals of Texas,
El Paso.

July 25, 1990.

Rehearing Overruled Sept. 26, 1990.

Edward L. Shelby, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

FULLER, Justice.

This is an appeal from a jury conviction for delivery of cocaine. The court assessed punishment at imprisonment for eight years. We affirm.

██ Point of Error No. One asserts that the lower court erred in admitting, over defense objection, State's Exhibits One, Two and Three due to the State's failure to establish the requisite chain of custody for the baggie allegedly transferred by Appellant to Investigator Rojo. At trial, Rojo unequivocally identified SX–3 as the baggie of cocaine received from Appellant on October 29, 1988. She marked the baggie with her initials and the date. Later, she sealed the baggie in a brown evidence envelope which she marked with the file number assigned to Appellant's case. She attached a laboratory submission form on which she entered the Appellant's name, sex, and race, the date of the offense and the county of occurrence. She then took these items to the office of the commander of the Permian Basin Drug Task Force for storage in a safe to which he alone had access. Investigator Dale Stanley testified that on November 10, 1988, he was in the process of personally delivering some of his contraband exhibits to the DPS laboratory. He stopped at the commander's office to see if any more suspected drugs required delivery. The commander opened the safe and gave him State's Exhibits One and Two. He personally delivered these two exhibits to DPS chemist Burgess Cooke. Cooke testified that he received them from Stanley, placing the assigned DPS laboratory case number on each. He stated that the original opening on the evidence envelope was still sealed. He left the seal intact and made a second opening to extract the contents for testing.

Appellant's challenge is two-fold. He argues the possibility of misidentification of the baggie, confusing it with others received and held by Rojo on October 29, prior to the segregation and more detailed marking described above. Apparently, Rojo and her paid informer, Kay Featherston, had made two other purchases prior to that involving Appellant. One involved a baggie of cocaine from an individual named "Willie"; the other involved a purchase of simulated heroin from one Javier Granado. This latter was a brown substance inside a tin foil package and according to Rojo's testimony could not be confused with the package received from Appellant. No questions were asked of Rojo

concerning the cocaine purchase from "Willie". Featherston testified that she could not describe the cocaine package received from "Willie" since it was tendered directly to Rojo. The evidence does not affirmatively reflect either a similarity in appearance or an actual commingling of substances.

Appellant's second complaint is that although Rojo handed the contraband to her commander and saw him open the safe, she did not actually see him place it inside. Prior to trial, the commander had accepted employment with another regional drug task force and was not called to testify. Thus there was no direct evidence concerning the integrity of the exhibit between Rojo's tender to the commander and the subsequent custody of Investigator Daley. There was testimony that the envelope seal created prior to delivery to the commander was still intact at the time of receipt by chemist Cooke.

We consider the demonstrated chain of custody sufficient to establish that degree of security and evidentiary integrity justifying admission of the exhibits. When such a showing is made, in the absence of affirmative evidence of tampering or commingling, minor theoretical breaches in the chain of custody go to the weight of the evidence and not its admissibility. *DeLeon v. State*, 505 S.W.2d 288 (Tex.Crim.App. 1974).

Point of Error No. One is overruled.

Point of Error No. Two asserts that Appellant was deprived of a fair and impartial trial, as well as rights of confrontation, by the State's deceptive pretrial failure to record the precise involvement of the paid informer who was a material witness to the offense, Kay Featherston. She was a drug user who was recruited by another member of the task force. Featherston was paid $50.00 for each introduction which led to an actual narcotics transaction. On October 29, 1988, she was working with Investigator Debbie Rojo. It was Featherston who knew Appellant and introduced him to Rojo. Although Rojo gave the purchase money to Appellant, Featherston testified that at the ultimate delivery in Appellant's apartment, it was she who picked up the tendered baggie of cocaine and handed it to Rojo.

Specifically, Appellant complains that Rojo's offense report omitted any mention of Featherston's involvement. According to Rojo, this was a standard reporting practice directed by the task force commander. Even during the State's opening statement, the prosecutor indicated that the evidence would disclose that Rojo was accompanied by a "friend". The details were ultimately disclosed to the jury during the testimony of Rojo and Featherston, both called by the State.

Appellant's complaint attempts a vague merger of the elements of two separate discovery doctrines—one associated with the disclosure of informants, *see Ex parte Turner*, 545 S.W.2d 470 (Tex.Crim.App. 1977), the other with disclosure/non-suppression of exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Appellant's complaint is without merit for three reasons. First, there was no pretrial defense motion for discovery, and the failure to disclose this information was not in violation of the court's own standard pretrial discovery order. Secondly, this information was not exculpatory under *Brady* and *Bagley*. Finally, the information was disclosed before the jury for their consideration in assessing the weight and credibility of the evidence. Appellant has not affirmatively demonstrated harm from the timing of this disclosure.

Point of Error No. Two is overruled.

Point of Error No. Three asserts a fatal variance between pleading and proof. The indictment alleged an actual transfer from Appellant to Debbie Rojo. Over State objection, the charge to the jury defined delivery under this indictment as "actual and

direct transfer from one person to another." Application paragraph three required, for conviction, that the jury find beyond a reasonable doubt that Appellant actually transferred the cocaine to Debbie Rojo, "directly and personally, and without an intermediary." A converse application paragraph (number four) required acquittal if the jury found or had a reasonable doubt that Appellant transferred the cocaine "to Kay Featherston, who in turn delivered it to Debbie Rojo...."

 The jury is free to reasonably accept or reject all or any portion of the testimony of the witnesses. *Lafoon v. State*, 543 S.W.2d 617 (Tex.Crim.App.1976). In this case, Rojo testified that Appellant handed her the bag of cocaine. Featherston testified that Appellant placed the baggie on the table in front of her and Rojo. She picked the baggie up and handed it to Rojo. The jury was free to reject Featherston's recollection and accept the depiction by Rojo, justifying conviction under paragraph three of the charge.

Although not necessary to the appellate disposition of this point, we note that the combined import of the court's definition of delivery and the application directives of paragraphs three and four was more favorable to Appellant than that to which he was entitled. Just as on the transferor's side one may be a party to an actual transfer without being responsible for effectuating the physical transfer itself, on the transferee side one may be a joint recipient of an actual transfer without being the one who physically receives custody of the contraband from the transferor. One of the hallmarks of constructive transfer liability is that the constructive transferor brings about a physical transfer to the ultimate transferee through the use of some person, agency, medium or cache positioned as an intermediary between himself and the ultimate transferee. *Daniels v. State*, 754 S.W.2d 214 (Tex.Crim.App.1988); *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Crim. App.1980); *Davila v. State*, 664 S.W.2d 722 (Tex.Crim.App.1984). The constructive transferor must be aware that his initial transfer to the intermediary agent is not to be the final transaction in the chain of distribution. *Daniels*, 754 S.W.2d at 221. This necessarily requires that there be a "distance" in the relationship between the intermediary and the ultimate transferee, such that the passage of the contraband between these two be susceptible to characterization as a distribution "transaction". On the other hand, if the transferor knows he is delivering to a group for the members' joint acquisition, his transfer to even one lone member of the group is the ultimate transaction and constitutes an actual delivery to each and every member of that transferee group. In this case, the posture presented to Appellant at the outset of negotiations was that Rojo and Featherston were making a joint purchase of contraband to be used and enjoyed together. Both were together when the cocaine was tendered to Appellant. He did not even single out a particular recipient, but placed the cocaine on the table in front of both transferees. The charge was misleading in this respect and unnecessarily narrowed the potential range of Appellant's culpability for actual transfer delivery. In any event, the verdict was proper on the basis of Rojo's testimony.

Point of Error No. Three is overruled.

The judgment is hereby affirmed.