**Early Junior CUBA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–94–00232–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 3, 1995.

Decided Aug. 10, 1995.

Sydney Young, Paris, for appellant.

Karla R. Baugh, Asst. District & County Attorney, Fannin County, Reg Controlled Substance App., Paris, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Early Junior Cuba was convicted of delivery of cocaine. He was tried by a jury, but at his election the trial court set the punishment, which was twenty-five years' confinement.

In five points of error Cuba raises these contentions: insufficient evidence supports the conviction because there is a variance between the allegation and proof of his name; the trial court erred in allowing the State to reopen its case to use a prior conviction for impeachment; he was denied the right to effective counsel when the trial court refused to allow his counsel to attack the indictment in a prior conviction; and the contraband was inadmissible because of a break in the chain of custody. We overrule all these contentions and affirm the judgment.

Before trial, Cuba moved to quash the indictment because the enhancement paragraph referred to a prior aggravated assault conviction that was voidable because the indictment in that cause mistakenly alleged that Cuba was the peace officer assaulted, when it should have named the complaining witness as the peace officer. The trial court granted Cuba's motion to strike the enhancement paragraph. Also before trial, Cuba informed the court that, although the indictment stated his name as "Early Bud Cuba, Jr.," his real name was "Early Junior Cuba." The court stated that the indictment would be amended to reflect Cuba's name as he

stated it. No amendment of the indictment was actually made, however.

At the trial, undercover officer Charles Desmares testified that he and a confidential informant met Roy Brown in Ladonia in Fannin County. Desmares and the informant told Brown that they wanted to buy drugs. They then went to Brown's house. At Brown's house, a man Brown identified as Early Junior Cuba drove up in a brown car and sold them $100.00 worth of cocaine. The State introduced cocaine and envelopes holding the cocaine as Exhibits 1–5. Cuba took the stand and testified in his own behalf. He said he was elsewhere during the drug sale and that the person who sold the cocaine was another man who resembled him and who used his name.

Cuba first argues that there is insufficient evidence to support the jury's finding that Early Bud Cuba, Jr. committed the offense as alleged in the indictment, and that the jury charge varied fatally from the allegations of the indictment.

 A variance between the allegation and the proof of a middle name is neither material nor fatal. *Martin v. State,* 541 S.W.2d 605, 606 (Tex.Crim.App.1976). And the suffix "Jr." is not part of a name. Its inclusion or omission with a name is immaterial in criminal proceedings. *Smith v. State,* 435 S.W.2d 526, 527 (Tex.Crim.App.1969). If a person is generally known by one name, or is known by one name as well as another, either name may be used in the indictment. *Dears v. State,* 465 S.W.2d 376 (Tex.Crim. App.1971). Failure to order a defendant's name changed in an indictment to that suggested by the defendant is not improper where the defendant uses different names, one of which is used in the indictment. *Fernandez v. State,* 172 Tex.Crim. 68, 353 S.W.2d 434, 436 (1962).

 Cuba does not complain of the sufficiency of the evidence apart from the name variation. Desmares testified that Cuba was identified to him as "Junior," "Early," "Early Cuba," and "Early Bud Cuba, Jr." Desmares used the final name on his investigative report because that was the name listed in the driver's license inquiry computer. At trial, Desmares testified and he identified Cuba as the person who sold him the cocaine. Cuba testified that he had gone by the nicknames "Bud" and "Junior," and that other Ladonia black males, some of whom resembled him, also went by the nickname of "Junior."

Although the court stated that the indictment would be amended, it was not. Nevertheless, reversible error is not shown. The variance between the middle names "Bud" and "Junior" and the omission of the suffix "Jr." are neither material nor fatal. *Martin v. State, supra; Smith v. State, supra.* Moreover, because Cuba went by the names "Bud," "Junior," and "Early," it was not error to use the name Early Bud Cuba, Jr. in the indictment. *Dears v. State, supra.* Because the evidence showed that Cuba was known by more than one name and that either name could therefore be used in the indictment, the trial court did not err by failing to correct the indictment. Tex.Code Crim.Proc.Ann. art. 21.07 (Vernon 1989); *Adwon v. State,* 708 S.W.2d 564, 568 (Tex. App.—Houston [1st Dist.] 1986, no pet.).

Cuba also contends that the trial court erred when it allowed the State to reopen its case on two different occasions and to call him to the stand and impeach him by proof of a prior conviction. He also contends that the court erred by applying Tex.Code Crim.Proc. Ann. art. 1.14(b) (Vernon Supp.1995)[1] in a manner that effectively denied him his Sixth Amendment right to counsel.

Cuba voluntarily took the stand and testified in his own defense. After the defense rested, the trial court allowed the State to reopen and recall Cuba to the stand, at which

---

1. Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp.1995) provides:

 (b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

time it introduced evidence that he was on probation for a charge of aggravated assault on a police officer. This was the same offense challenged by the motion to quash the enhancement paragraph. The court also allowed the State to reopen to let Desmares testify about the physical dissimilarity between Cuba and James Elliot Brown. Cuba had testified that Brown went by the name of "Junior" and resembled him.

■■■ The trial court shall allow testimony to be introduced at any time before the argument is concluded if it appears necessary to the due administration of justice. TEX.CODE CRIM.PROC.ANN. art. 36.02 (Vernon 1981). The decision to reopen is left to the trial court's sound discretion. *Cain v. State,* 666 S.W.2d 109 (Tex.Crim.App.1984); *Perry v. State,* 464 S.W.2d 660, 662 (Tex.Crim. App.), *appeal dism'd w.o.j. and cert. denied,* 404 U.S. 953, 92 S.Ct. 324, 30 L.Ed.2d 270 (1971). In fact, the trial court must reopen a case when the witness is present and ready to testify, the request to open has been made before the charge was read to the jury and final arguments were made, and the judge has some indication of what the testimony will be and is satisfied that it is material and bears directly on the main issues in the case. *Gibson v. State,* 789 S.W.2d 421, 423 (Tex. App.—Fort Worth 1990, pet. ref'd).

■■ Cuba contends that the trial court erred because it had no evidence about what the testimony would be and that the testimony was inadmissible.

The decision to reopen the case is in the trial court's discretion. The attorneys had not delivered their closing arguments. The trial court apparently determined that the reopening was necessary to promote the due administration of justice. The court's knowledge of the proposed evidence is important only when the court *must* reopen the case. Here, the court's decision was discretionary. Moreover, the evidence was admissible. We find no error in allowing the reopenings.

Cuba contends that the court should not have allowed the State to impeach him by calling him directly, but should have allowed the State to cross-examine him only when he testified in his own defense.

■■■ U.S. CONST. amend. V and TEX. CONST. art. I, § 10 give the accused the right against self-incrimination, but when the accused voluntarily takes the stand to testify, he waives that right. *Brumfield v. State,* 445 S.W.2d 732, 735 (Tex.Crim.App.1969). A defendant cannot take the witness stand for a limited purpose, and when he testifies he may be cross-examined on the whole case. *Perez v. State,* 170 Tex.Crim. 586, 343 S.W.2d 256, 258 (1961). When the defendant takes the stand he subjects himself to any legitimate cross-examination within the rules of evidence. *Brumfield v. State, supra.* When Cuba voluntarily took the stand he waived his right against self-incrimination. He subjected himself to examination within the rules of evidence on any aspect of the case, and on direct or on recall. *Brumfield v. State, supra; Petty v. State,* 94 Tex.Crim. 211, 250 S.W. 163 (1923).

We next consider whether it was error to allow evidence of the prior conviction as impeachment.

■■■ A trial court may admit evidence of felony convictions for impeachment if it determines that the evidence's probative value outweighs its prejudicial effect. TEX. R.CRIM.EVID. 609(a). Aggravated assault is a felony. TEX.PENAL CODE ANN. § 22.02(c).[2] In determining whether the probative value of a conviction outweighs its prejudicial effect, the trial court should consider: (1) its impeachment value, (2) its temporal proximity to the charged offense and the witness's subsequent history, (3) similarity between it and the offense charged, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Theus v. State,* 845 S.W.2d 874, 880 (Tex.Crim.App. 1992). In reviewing the trial court's weighing of these factors and its decision, an appellate court will accord the lower court wide discretion. *Id.* at 881. The reviewing court will reverse the trial court's determination

---

2. Act of May 28, 1989, 71st Leg., ch. 939, § 1, 1989 Tex.Gen.Laws 4003, *amended by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen.Laws 3619, current version found at TEX.PE- NAL CODE ANN. § 22.02(b) (Vernon 1994).

only if its decision lies outside the zone of reasonable disagreement.

■ The first factor weighs somewhat against admissibility. Aggravated assault is not an offense that usually involves untruthfulness or deception and thus it is not one that would ordinarily bear heavily against a witness's veracity. Moreover, aggravated assault on a peace officer might be especially prejudicial to a jury and thus might outweigh its probative value as impeachment.

As to the second factor, the aggravated assault occurred about two years before the charged offense. TEX.R.CRIM.EVID. 609 provides that the evidence is not admissible if more than ten years has elapsed from the date of conviction or release. While the ten-year limit is not determinative here, the conviction in this case falls well within that range.

As to the third factor, the crimes are dissimilar. The similarity of the crimes would militate against admissibility because jurors might convict on the perception of a past conduct rather than on the facts of the offense charged.

As for the fourth and fifth factors, Cuba was the sole witness in his own behalf. His credibility was vital because he testified that he was elsewhere during the cocaine sale.

On the whole, the trial court's decision that the probative value of the impeachment evidence outweighed its prejudicial effect lies within the realm of reasonable disagreement and cannot be said to constitute an abuse of discretion.

■ Even if admission of the impeachment conviction was error, there remains the question whether the error was harmful and reversible. *See* TEX.R.APP.P. 81(b)(2). To decide that question, we isolate the error and its effects and determine whether a rational trier of fact might have reached a different result had the error and its effects not occurred. *Harris v. State,* 790 S.W.2d 568, 588 (Tex.Crim.App.1989). Although a correct result is not proof of harmless error, the error can be harmless if overwhelming evidence dissipates its effect on the jury function in determining the facts so that

it did not contribute to the verdict. *Id.* at 587.

■ The State relied on the testimony of the undercover police officer, who said that Cuba sold him the cocaine. Cuba testified that he was elsewhere and that other black males in Ladonia resembled him and used similar names. Cuba also said he was with a former girlfriend at the time of the sale, but he did not offer her testimony. We conclude that the overwhelming evidence supports the conviction and would have dissipated the effects of any error with respect to the impeachment evidence.

■ Cuba also contends that the court committed reversible error by applying TEX. CODE CRIM.PROC.ANN. art. 1.14 (Vernon Supp. 1995) in a manner that effectively denied him his Sixth Amendment right to counsel. Under Article 1.14, a defendant who does not object to a defect, error, or irregularity of form or substance in an indictment waives the right to object on appeal or in other postconviction proceedings. Cuba did not object to the defective indictment in the prior aggravated assault case and therefore waived any complaints as to it. He now argues that the court deprived him of his right to counsel in this trial when it allowed the State to question him about his aggravated assault conviction which was the subject of his motion to quash.

Cuba relies on *Murray v. State,* 857 S.W.2d 806, 809 (Tex.App.—Fort Worth 1993, pet. ref'd). In that case, the court altered the jury charge after the jurors began deliberation. The appeals court held that the trial court deprived the defendant of effective counsel because the opportunity provided by closing argument is not meaningful if counsel is misled as to what constitutes the dispositive issues in the case. We do not have such a situation here. Before trial, Cuba moved to quash the enhancement paragraph of the indictment based on the prior conviction, and the court granted the motion. During both the guilt/innocence and punishment phases of the trial, the State introduced evidence of the prior conviction over defense objections that it was based on a fatally defective indictment. The trial court did not undercut defense counsel, as

occurred in *Murray v. State.* Cuba was represented during all phases of the trial, and his counsel was fully aware of the determinative issues. The statutory waiver mandated by Article 1.14 does not deprive a defendant of effective counsel.

Finally, Cuba argues that the trial court erred when it overruled his objection to the admissibility of State's Exhibits 1–5 because of a breach of the chain of custody.

State's Exhibits 1–5 were a manila envelope used to mail the cocaine to the Department of Public Safety lab in Garland, Texas; the green return receipt showing the envelope arrived at the Garland lab; the certified mail receipt showing the police mailed the envelope to the lab; and the two green bags containing cocaine that were sent to the lab.

Greg Sampley, evidence officer for the regional drug task force, testified that he picked up the evidence from the crime lab in Garland and placed it in his evidence locker. He had the only key. After he received the evidence, he went on vacation, and while on vacation, he left the locker key with Gary Templeton, another officer. He made no notation of that on the envelope. Brian Blickensderfer, a chemist with the Garland lab, testified that he did not originally open the manila envelope, but instead an evidence technician in the lab opened it. Cuba argues that these two incidents show affirmative breaks in the chain of custody and show that tampering possibly occurred.

Before the rules of evidence were adopted, proof of the chain of custody went to the weight rather than to the admissibility of the evidence. *DeLeon v. State,* 505 S.W.2d 288, 289 (Tex.Crim.App.1974). The Rules of Criminal Evidence do not specifically address the chain of custody issue. They simply provide that the authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *See* Tex.R.Crim.Evid. 901(a).

■ In instances in which proof of a chain of custody is necessary, the State must adduce such proof to establish that the evidence is what the State says it is. *Moore v.*

*State,* 821 S.W.2d 429, 431 (Tex.App.—Waco 1991, no pet.); *see also Stone v. State,* 794 S.W.2d 868, 869 (Tex.App.—El Paso 1990, no pet.). Absent affirmative evidence or commingling, minor theoretical or speculative breaches in the chain of custody will not affect admissibility. *Moore v. State, supra.*

■ Cuba has offered no affirmative evidence of tampering or commingling. He only argues about minor theoretical breaches in the chain of custody. Without evidence of impropriety, theoretical breaches do not affect the evidence's admissibility.

For the reasons stated, we affirm the judgment of the trial court.