

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00051-CR
_____


GREGORY MAURICE LIVINGSTON, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 10F0371-202



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Gregory Maurice Livingston was convicted and assessed punishment by a jury for the felony offense of burglary of a habitation.[1]   In accordance with the jury verdict, Livingston was sentenced to twelve years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.   Livingston argues the trial court erred in two respects: (1) in allowing the State to cross-examine him concerning an aggravated assault conviction; and (2) in admitting evidence of his alleged witness tampering.   We affirm the judgment of the trial court.

## I.     Background

Livingston was arrested for a burglary committed during the afternoon hours of November 16, 2009.   The only witness to the burglary was Ryan Leslie, who lived in the apartment adjoining that of Jacqulyn Jackson, from which Livingston allegedly removed several items of value.

Around 2:00 p.m. on the afternoon in question, Livingston allegedly knocked on Leslie's door and asked if a man named "Pig" was there.   Leslie denied knowing anyone by the name of "Pig," and Leslie did not know Livingston.   A few minutes after Leslie's brief conversation with Livingston, Leslie heard a commotion next door in Jackson's apartment.   When he looked outside, Leslie saw the same man who had just minutes earlier knocked on his door.   He saw the man, later identified as Livingston, carrying a television from the back of Jackson's apartment.

---

[1] TEX. PENAL CODE ANN. § 30.02 (West 2011).

2

After Livingston put the television in the trunk of a red four-door Cadillac, he got into the back seat of the car, and it sped off. Leslie was able to make a positive identification of Livingston from a lineup as the man he saw loading a television into the trunk of the red Cadillac.

Leslie further testified that in February 2011, when Livingston's case was initially set for trial, he received a telephone call from an individual who identified himself as Livingston. Livingston allegedly told Leslie that Leslie was going to court against Livingston the following day and, "I want to fill your pockets full of money." Leslie reported the call to the district attorney's office and to the local police department.

## II. Analysis

### A. Admission of Prior Conviction

Prior to taking the witness stand to testify in his own defense, Livingston moved the court to permit him to "testify free of his prior conviction in Arkansas pursuant to Rule 609." The trial court denied the request.[2] Livingston contends the trial court erred in ruling that he could not testify free from impeachment by evidence of a prior conviction for aggravated assault. The State argues that the balancing test under *Theus* weighs in favor of admission, and therefore, the trial court did not abuse its discretion in permitting the contested cross-examination.

---

[2]Livingston is also critical of the trial court's denial of his request to testify free of his prior conviction, without providing an explanation for its decision. While *Theus* concluded that "[n]othing in Rule 609(a) requires the trial court to make specific findings of fact and conclusions of law in weighing probative value and prejudicial effect," the better practice is to "enunciate on the record not only whether the probative value of a conviction outweighs its prejudicial effect, but also the rationale behind such a determination." *Theus v. State*, 845 S.W.2d 874, 880 n.6 (Tex. Crim. App. 1992). This Court is free to presume that the trial court conducted the necessary balancing test, which need not be shown in the record. *Bryant v. State*, 997 S.W.2d 673, 676 (Tex. App.—Texarkana1999, no pet.).

Trial courts are afforded wide discretion in deciding whether to admit evidence of a defendant's prior conviction. *Theus*, 845 S.W.2d at 881; *Edwards v. State*, 883 S.W.2d 692, 694 (Tex. App.—Texarkana 1994, pet. ref'd). When considering whether a trial court's decision to admit or exclude evidence is error, we apply an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.*

Rule 609 of the Texas Rules of Evidence addresses impeachment by evidence of conviction of a crime, and provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX. R. EVID. 609(a). Rule 609 requires that as a prerequisite to admitting impeachment evidence against an accused, the trial court must find that the probative value of such evidence outweighs its prejudicial effect. *Theus*, 845 S.W.2d at 879–80. Although not exclusive, the following factors should be considered: (1) the impeachment value of a prior crime; (2) the temporal proximity of the prior crime relative to the charged offense and the defendant's subsequent history; (3) the similarity between the prior offense and the charged offense; and (4) the importance of the defendant's testimony and his or her credibility. *Id.* at 880.

4

*(1)    Impeachment Value*

"The impeachment value of crimes that involve deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice. . . ." *Id.* at 881. Livingston maintains this factor weighs against admission of his prior aggravated assault conviction, given that it is not a crime of moral turpitude and its violent nature creates a higher potential for prejudice. The State concedes this first factor "weighs somewhat against admissibility." Although a felony, the offense of aggravated assault would not typically involve deception or bear heavily against a witness' veracity. While "all felonies have some probative value on the issue of credibility,"[3] the impeachment value here generally weighs against admissibility.

*(2)    Temporal Proximity*

Livingston concedes that because his prior conviction occurred approximately five years prior to the instant offense, this factor favors admissibility.[4]

*(3)    Similarity of Offenses*

When a defendant's prior offense and the charged offense are similar, a danger arises that the jury will convict the defendant based on a perception of past conduct, rather than based on the facts of the charged offense. Therefore, if the prior offense is similar to the charged offense, this weighs against admission of the prior conviction. *Id.* at 881. Livingston concedes that

---

[3]*Theus*, 845 S.W.2d at 879 n.3.

[4]Rule 609 provides that evidence of a prior conviction is not admissible if more than ten years has passed from the date of conviction or release, subject to an exception not applicable here. TEX. R. EVID. 609(b). Livingston's prior conviction falls well within that range.

aggravated assault and burglary are not similar offenses, which weighs in favor of admission of the prior conviction. *See, e.g., LaHood v. State*, 171 S.W.3d 613, 621 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (aggravated kidnapping and aggravated sexual assault are not similar to burglary).

### *(4)  Importance of Defendant's Testimony and Credibility*

The importance of the defendant's testimony and his or her credibility address the nature of the defense and the means available to prove that defense. *Theus*, 845 S.W.2d at 881. "As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id.* Livingston maintains that the credibility of his testimony is not of critical import because, in addition to his testimony, Monica Moton testified as an alibi witness for the defense.[5]

Livingston, however, presented a second defense based on a prior relationship with Leslie, the only witness to the burglary. Leslie testified that he did not know Livingston, and had never seen him prior to the day of the offense. To the contrary, Livingston testified he knew Leslie, they frequently smoked marihuana together, and Leslie owed Livingston an undisclosed amount of money. After Livingston confronted Leslie about paying the debt, Leslie became "really scared" of Livingston. Livingston testified that he believes Leslie leveled these accusations against him

---

[5]Moton testified that she was off work the day of the burglary and Livingston was at home with her that day. Moton further testified that the car allegedly utilized in the burglary was at her residence the entire day, except when she took the children to school and picked them up in the afternoon.

because it was the only way Leslie could "get rid of" Livingston. According to Livingston, Leslie knows Livingston and he is familiar with Livingston's car.

Livingston was the sole witness in regard to his relationship with Leslie. This testimony was characterized by counsel for Livingston as the "crux of our defense." Livingston's testimony and his credibility were both important given his testimony that the sole witness to the burglary had a motive to falsely accuse him. These factors thus weigh in favor of admission of Livingston's prior conviction.

The trial court did not abuse its discretion in permitting the State to impeach Livingston with his prior aggravated assault conviction. The *Theus* factors favor admission of the conviction and Livingston's credibility was vital to his defense. *See Cuba v. State*, 905 S.W.2d 729, 734 (Tex. App.—Texarkana 1995, no pet.) (court acted within its discretion in determining that in trial for delivery of cocaine, probative value of defendant's prior conviction for aggravated assault outweighed prejudicial effect where defendant's credibility was vital to his defense).

### B. Evidence of Alleged Witness Tampering

In his final point of error, Livingston contends the trial court abused its discretion by admitting evidence of Livingston's alleged witness tampering. The trial court's evidentiary ruling must be upheld as long as it is within the zone of reasonable disagreement and is correct under any theory applicable to the case. *Johnson v. State*, 263 S.W.3d 405, 419 (Tex. App.—Waco 2008, pet. ref'd).

7

After Livingston testified that he knew Leslie and that Leslie had a motive to falsely accuse him, the State moved to cross-examine Livingston about certain telephone calls he allegedly made to Leslie, offering Leslie money not to testify against Livingston. Livingston objected to the requested cross-examination because evidence of alleged witness tampering was not relevant, the testimony would be substantially more prejudicial than probative, and the charges were still being investigated.

Livingston was then questioned outside the presence of the jury regarding telephone calls he allegedly made to Leslie. Livingston denied calling Leslie and denied offering to pay for favorable testimony. The State informed the trial court that both Leslie and the investigating officer were available to testify regarding the alleged telephone calls. The trial court overruled Livingston's Rule 403 objection and permitted Livingston to be cross-examined about the alleged telephone calls. *See* TEX. R. EVID. 403. After Livingston denied making telephone calls to Leslie, the trial court determined the State should be permitted to offer extrinsic evidence of the alleged telephone calls under Rule 613 of the Texas Rules of Evidence.[6]

---

[6]Rule 613 provides, in pertinent part:

> In impeaching a witness by proof of circumstances or statements showing bias or interest on the part of such witness, and before further cross-examination concerning, or extrinsic evidence of, such bias or interest may be allowed, the circumstances supporting such claim or the details of such statement, including the contents and where, when and to whom made, must be made known to the witness, and the witness must be given an opportunity to explain or to deny such circumstances or statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits such bias or interest, extrinsic evidence of same shall not be admitted. A party shall be permitted to present evidence rebutting any evidence impeaching one of said party's witnesses on grounds of bias or interest.

8

Leslie testified that he received a telephone call from a private number the night before Livingston's case was originally set for trial. Leslie did not answer the call.[7] The next morning, Leslie received a telephone call from an individual who stated, "You're going to court against me tomorrow and I want to fill your pockets full of money." The caller identified himself as Greg Livingston. Leslie immediately reported the call to the district attorney's office and to the local police department.

Detective Micah Brower of the Texarkana Police Department testified that he is the lead investigator on Leslie's report of witness tampering. Leslie's statement to Brower was that Livingston offered him money to testify favorably for Livingston. Brower subpoenaed Livingston's telephone records, but did not bring them to trial because they had not been fully reviewed.

On appeal, Livingston maintains that it is the *nature* of the evidence—as opposed to the theory of admissibility—that is objectionable.[8] The evidence in question, concedes Livingston, shows consciousness of guilt. But, he maintains, it is not reliable.

---

TEX. R. EVID. 613(b).

[7]Leslie explained that the only call from a private number he usually received was from his father. The call shows "Private number, Pops." Leslie did not answer the call merely showing "private number" because he did not know if it was a call from his father. Leslie called his father the next morning to ask if he called on the previous evening, and learned that he did not.

[8]Livingston concedes that "an attempt to tamper with a witness is evidence of 'consciousness of guilt,'" and such evidence has been held admissible pursuant to Rule 404(b) of the Texas Rules of Evidence. *Johnson*, 263 S.W.3d at 426 (citing *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999)); *see* TEX. R. EVID. 404(b).

9

Livingston points to the jury's questions during deliberations as evidence of harm caused by the admission of unreliable witness tampering evidence. During deliberations, the jury requested the opportunity to review the telephone records for the day in question, and further requested information indicating when Livingston learned of the identity of the witness. Finally, the jury wondered, "Why there were no witnesses or evidence or collaborating [sic] parties included to prove these two parties (Greg L. & Ryan L.) knew each other?"[9] Obviously, Livingston claims, the jury had questions about whether Livingston and Leslie knew each other prior to the incident in question, and the jury should not have been forced to rely on unreliable evidence to arrive at its verdict.

Livingston's complaint, at least in part, appears to be directed not to the admissibility of the evidence, but to its weight. The jury is the sole judge of the credibility of the witnesses and the weight of the evidence it receives. *Johnson v. State*, 23 S.W.3d 1, 16 (Tex. Crim. App. 2000), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893, 912–13 (Tex. Crim. App. 2010). Accordingly, the jury was free to disregard the witness tampering evidence if it believed such evidence was too weak or not credible. It was also within the province of the jury to believe the witness tampering evidence if it found such evidence to be credible.

To the extent Livingston's complaint is based on the notion that the witness tampering testimony was unfairly prejudicial, his complaint implicates Rule 403. Under Rule 403 of the

[9]The trial court responded to each of the jury's questions by indicating that the jury would have to make its decision based on the evidence introduced.

Texas Rules of Evidence, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. In determining whether evidence is relevant, we look to the purpose for which the evidence was offered and whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved. *Goodwin v. State*, 91 S.W.3d 912, 917 (Tex. App.—Fort Worth 2002, no pet.).

Because it constituted evidence of Livingston's consciousness of guilt, the witness tampering testimony was highly relevant. *See Johnson*, 263 S.W.3d at 426 (evidence of witness tampering is substantive evidence of guilt). "[A]n attempt to tamper with a witness is evidence of 'consciousness of guilt.'" *Wilson*, 7 S.W.3d at 141.

Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Taylor v. State*, 93 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. ref'd). In order for this evidence to have been unfairly prejudicial, it must have had a tendency to suggest a decision on an improper basis. *Montgomery v. State*, 810 S.W.2d 372, 395 (Tex. Crim. App. 1990) (op. on reh'g). Stated another way, "unfairly prejudicial" evidence is evidence that "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). There is no indication that was the case here, and

11

Livingston does not advance such an argument. The evidence in question did not require a significant amount of time to present, and there was no argument it might impact the jury in some irrational, but nevertheless indelible way. *See Montgomery*, 810 S.W.2d at 390. The witness tampering evidence was highly probative of Livingston's consciousness of guilt. Livingston has failed to show that the trial court's admission of this evidence was an abuse of discretion.

Further, and to the extent Livingston complains that Rule 613 requires extrinsic evidence of a prior inconsistent statement or bias to be independently corroborated, we find no authority in support of this assertion.[10] Under Rule 613(b), "[p]arties are allowed great latitude to show 'any fact which would or might tend to establish ill feeling, bias, motive, and animus on the part of the witness.'" *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). The Rule directs that before a witness may be impeached by extrinsic evidence of a prior inconsistent statement or bias, he or she must be informed of the statement's content, the time and place at which it was made, and the person to whom it was made. TEX. R. EVID. 613(b). If the witness denies making the prior statement, extrinsic evidence of same is admissible. The State complied with the requirements of Rule 613 by providing Livingston with the circumstances supporting its claim, including the contents of the prior statement, together with the details of its making. Extrinsic evidence of the alleged telephone calls was not admitted until after Livingston denied making those calls. We find no error in the admission of extrinsic evidence of witness tampering under

---

[10]Here, Livingston claims the only evidence of alleged witness tampering came from Leslie. Brower also testified of Leslie's report of tampering to him on the day of the alleged telephone call.

Rule 613. Having so found, we overrule this appellate point.

## III. Conclusion

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted: October 20, 2011
Date Decided: November 15, 2011

Do Not Publish