**Robert Earl DENTON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–93–452–CR.**

Court of Appeals of Texas,
Fort Worth.

March 30, 1995.

Rehearing Overruled May 18, 1995.

Law Offices of Larry M. Moore, Larry M. Moore, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs, Sylvia Mandel, Terri Moore, Assts., Fort Worth, for appellee.

Before CAYCE, C.J., and DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

Robert Earl Denton appeals his conviction by a jury for the offense of murder. TEX. PENAL CODE ANN. § 19.02 (Vernon 1994). The jurors assessed punishment at twenty-two years' confinement.

Appellant presents eight points of error on appeal, including challenges to the sufficiency of the evidence and complaints concerning alleged improper jury argument by the State at the guilt/innocence stage of the trial. We reverse and remand the case for new trial.

We begin by reviewing appellant's sufficiency challenges.

In point of error one, appellant contends the trial court erred in denying his motion for instructed verdict, which challenged the

sufficiency of the evidence. In his second point of error, appellant alleges the evidence was insufficient to support the guilty verdict returned by the jury.

A review of the trial testimony is necessary.

On the night of September 23, 1989, appellant entered his estranged wife's home and discovered her in bed with Clayton Brown. Appellant then drove to his home, obtained his shotgun, and returned to his wife's residence where he shot and killed Brown. The defense advanced at trial was that the shooting was accidental.

In support of the State's theory that the shooting was intentional, the following testimony was introduced during the State's case-in-chief. Myra Brown, the victim's wife, testified she received a phone call from appellant at approximately 3:00 a.m. on the night of the shooting. Appellant inquired as to whether Myra knew where her husband, Clayton, was. When she responded she did not know, appellant told her, "[W]ell, I caught the son of a bitch with my wife and I'm going to kill him." Brown testified she begged appellant not to kill her husband.

Appellant was standing in the open doorway of the residence when police officers responding to the reported shooting arrived. When one of the officers asked what was going on, appellant allegedly responded, "I shot the guy inside." Appellant also informed the officer his wife, Pamela, had fled down the street.

Appellant provided the police authorities a written statement which was introduced at trial. In the statement appellant related that he had been receiving hang-up phone calls at his residence and the calls had ceased after Pamela moved out. On the night of the murder, appellant had dinner at Pamela's apartment. While he was there, the phone rang but the caller hung up. Suspicious, appellant asked his wife if she was seeing someone. She denied she was. Appellant then decided to place a tap on Pamela's phone to determine if she was, in fact, seeing someone else. He left and returned in the middle of the night. He hooked up the recorder and then let himself into the apart-ment to determine whether the recorder was working. Inside, he discovered his wife with Brown. When he left the apartment he saw a vehicle he knew belonged to Brown. He slashed the back tires to prevent Brown from leaving. He then took his wife's car, returned to his home, and retrieved his camera to enable him to document his wife's transgression. He returned to the apartment and pushed his way in. According to his statement, only when Pamela told him to shoot her did he remember he brought the shotgun with him. A struggle ensued and the gun went off.

At trial, appellant testified the shooting was accidental and occurred when he and Pamela struggled over the weapon. His testimony was basically consistent with his written statement.

Richard Ernest, a firearms examiner employed by the Tarrant County Medical Examiner's Office, testified and demonstrated the operation of appellant's shotgun. Ernest described the various steps necessary to fire the gun and testified the shotgun was in excellent working order and could not be accidentally discharged. Finally, a deputy medical examiner testified he performed an autopsy on the body of Clayton Brown and that Clayton died as a result of a shotgun wound to his chest.

We now turn to the standard of review.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). A challenge to the denial of a motion for instructed verdict is actually an attack on the sufficiency of the evidence and is measured under the same standard as a sufficiency challenge. *Madden v. State*, 799 S.W.2d 683, 686–87 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

■ We find the evidence was sufficient to support the conviction under the above standard. Evidence that shortly before the killing appellant told Brown's wife that he had caught Brown in bed with Pamela and said, "I'm going to kill him," coupled with appellant's use of the deadly weapon which caused Brown's death, was sufficient justification for the jurors to reject appellant's claim of accident. A rational jury could conclude from the evidence that appellant murdered Brown because he caught him in bed with his estranged wife.

Points of error one and two are overruled.

In point of error four, appellant complains of two references by the State during jury argument to evidence which was not introduced at trial. Both references concern statements allegedly made by appellant to his wife at the time of the shooting—statements which, if believed, would conclusively show the shooting was not accidental.

Of critical significance to the instant issue is whether there is evidence in the record showing what words, if any, were spoken by appellant immediately prior to the discharge of the gun. Our review of the record shows the only testimony even remotely addressing that question occurred during the State's cross-examination of appellant:

A. When I looked to see the gun, I noticed her out of the corner of my eye coming at me. I just let go and brought the gun up. And we was [sic] struggling, and she jerked it down. And when she jerked it down, it went off.

Q. Oh, okay. So she lunged at a man with a loaded gun in his hand?

A. Yes, ma'am.

Q. And was the barrel pointed toward her or not?

A. No, ma'am.

Q. *Now, Mr. Denton, look up here and tell me whether or not you said to Pamela Denton, "I'm going to shoot you"—"I'm going to shoot him and you're going to watch me, and then I'm going to shoot you"?*

A. *No, ma'am.*

Q. *You never said that, "I'm going to shoot him and you're going to watch me, and then I'm going to shoot you."*

*You never said that?*

A. *I don't remember.*

Q. *You don't remember?*

A. *I don't remember.*

Q. *Or better yet, "Bullshit. You're going to stand there and watch me shoot him, and then I'm going to shoot you."*

*Do you remember those words?*

A. *No, ma'am.* [Emphasis added.]

The prosecutor, during jury argument, made the following statement:

[PROSECUTOR]: He was thinking *when he told her, you're going to stand right there and you're going to watch while I kill him, and then I'm going to kill you.* He was thinking when he took the safety off that shotgun. [Emphasis added.]

[DEFENSE COUNSEL]: Your Honor, I'm going to object. That's outside the record.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note our exception. That was a question, not testimony, Your Honor.

Thereafter, during his closing argument, defense counsel argued the physical evidence

supported appellant's assertion the shooting was accidental:

> [DEFENSE COUNSEL]: Why didn't Robert—if Robert went over there to kill her and Clayton Brown, why did he take two bullets? Why did he shoot him through the couch? That's kind of a chancy deal. You have only got two shots. You have got two people you are trying to snuff here. Let's shoot through this couch and hope we hit him good. That leaves us one shot to try to get her with.
>
> Why—instead of taking the picture, why don't we just plug her right there? When I walk in the room, if that's my intent, why shoot him through the couch first and then worry [about] her? That doesn't make sense. It didn't happen that way.

The second prosecutor in the case thereafter again suggested the existence of testimony indicating that appellant had commanded his wife, immediately prior to the shooting, to watch him shoot the victim:

> [PROSECUTOR]: She tells him, shoot me, and—you know, and he says, well, he could have killed them both. Why didn't he kill her first? Larry or Tolly, one, said *because he told her, ladies and gentlemen, he's going to make her pay, see, for her infidelity. You're going to stand right here and watch me while I shoot*—[Emphasis added.]
>
> [DEFENSE COUNSEL]: Objection. That's outside the record. There is no evidence at all he told her anything.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: We would ask that the jury be instructed to disregard that comment from the Prosecutor.
>
> THE COURT: Jury will disregard that remark.

On appeal, the State contends both arguments were proper, arguing, "Since the jury had the duty to resolve conflicts in testimony, it could conclude that the words were spoken but that Appellant did not at the time of trial, four years later, remember the words he had spoken."

We reject the State's position.

■ Questions are not evidence. *Sendejo v. State*, 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992, no pet.). Therefore, there was no conflict for the jurors to resolve. Simply stated, there was no testimony in the record supporting the prosecutors' repeated assertions that appellant told his wife, immediately prior to the shootings, he was going to kill the victim, then her.

■ Arguments alluding to information not introduced into evidence are improper and are reversible if they inject or emphasize harmful facts outside the record. *See Daniel v. State*, 550 S.W.2d 72, 73 (Tex.Crim.App. 1977) (argument that witness was unable to appear because he had been shot required reversal); *Whaley v. State*, 367 S.W.2d 703, 704 (Tex.Crim.App.1963) (comment on an inadmissible confession); *Morris v. State*, 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (placing value on narcotics seized without evidence in support).

The State also argues appellant's complaints were waived. In the first instance, the State suggests defense counsel's objection was lodged too late since the prosecutor was able to complete one more sentence before counsel interrupted the argument with his objection.

■ In support of its contention, the State cites cases holding that a defense objection to a prosecutor's question is untimely where the objection is lodged only after the witness answers the question. *See, e.g., King v. State*, 631 S.W.2d 486, 492–93 (Tex.Crim. App.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982). While we agree that an objection to a question is untimely after a witness provides an answer, we do not agree that an objection to an improper statement occurring during jury argument, in all cases, must necessarily be met with an objection occurring between the end of one sentence and the beginning of the next.

■ There have been several cases reversed by the Court of Criminal Appeals for improper jury argument where defense counsel's objection was not lodged until one sentence after the offending statement. *See, e.g., Woerner v. State*, 576 S.W.2d 85, 86 (Tex.Crim.App.1979); *Daniel*, 550 S.W.2d at

73–74. We believe the very nature of the prosecutor's argument, coupled with defense counsel's objection "that's outside the record" and statement "[t]hat was a question, not testimony, Your Honor," was sufficient in the instant case to identify the error and provide the trial court the opportunity to take corrective action. *Daniel,* 550 S.W.2d at 74.

The history of the contemporaneous objection rule and its application to issues involving alleged improper jury argument appears to have its origins in the attempted practice years ago of defense counsel who intentionally waited until after the completion of the argument before voicing any specific objections. In *Wood v. State,* 142 Tex.Crim. 282, 152 S.W.2d 335 (1941), that practice was specifically condemned. The court in *Wood* stated objections should be "so made that the attorney making the claimed improper argument may know what is being urged against his argument and be in a position to explain or withdraw it if he has violated the proprieties in the matter." *Wood,* 152 S.W.2d at 338. In *Curtis v. State,* 640 S.W.2d 615 (Tex.Crim. App.1982), the court held:

> [W]hen a comment, remark, assertion or line of argument is deemed improper the time to redress and cure it is when it is made, and the means is the contemporaneous objection that invoke pallative [sic] responses from the trial judge. Appellant voiced no objection at all and, though he filed a motion for new trial assailing certain comments and assertions, the motion does not complain of much that is alluded to in his brief. We are constrained to hold that nothing is presented for review.

*Id.* at 618 (citations omitted).

In contrast to the situation in *Curtis,* defense counsel in the instant case voiced a specific objection to the error within seconds of its occurrence. He further immediately followed his objection with the statement identifying the nature of the error. We believe under these circumstances the objection was timely, sufficiently identified the statement being contested, and should have been sustained.

In a second waiver argument, the State notes defense counsel failed to request a mistrial when the second prosecutor repeated the assertion in the presence of the jury during her argument. There defense counsel's objection was sustained and the trial court instructed the jury to disregard the remark. Since defense counsel did not move for mistrial, the argument warrants reversal only if we conclude the error could not be obviated by the trial court's ruling on the instruction to disregard. *See Gayle v. State,* 713 S.W.2d 425, 428 (Tex.App.—Houston [1st Dist.] 1986, no pet.). We hold the cumulative effect of the prosecutors' repeated references to evidence outside the record on an issue vital to the defense could not have been cured by an instruction to disregard in the second instance, particularly where defense counsel's objection to the first instance where the offending remark was made was overruled by the trial court.

Tex.R.App.P. 81(b)(2) requires us to reverse the conviction and sentence unless we determine, beyond a reasonable doubt, the errors were harmless. In *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989), the court set out the factors to consider in performing a harm analysis. Those factors include: the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, its probable collateral consequences, and how much weight a juror would probably place upon the error. *Harris,* 790 S.W.2d at 587. The court should also consider whether declaring the error to be harmless would encourage the State to repeat it with impunity. *Id.*

On appeal, the State contends the source of the error was both the State and the defense. Specifically, the State contends the repetition of the argument occurred in response to a question set forth by defense counsel, to-wit: defense counsel's rhetorical inquiry as to why, if appellant intended to murder his estranged wife, he did not shoot her first. We reject that position and hold the source of the error was the State alone. The State's right to respond to defense counsel's rhetorical question was not an open invitation for the prosecutor to erroneously pronounce appellant told his wife he would want her to witness the killing of Brown when, in fact, there was no such evidence.

The nature of the error was a reference by the State to evidence outside the record concerning a critical issue in the case. Moreover, the error was repeated by each prosecutor. While we do not believe the errors were the result of any intentional misconduct on the part of the State, the fact remains the same mistake was made by each of the two prosecutors.[1]

As to the probable collateral consequences and the likely effect of the errors on the jury, we believe it cannot be determined beyond a reasonable doubt the jurors were not swayed by the State's argument. We admit the defense presented was weak; however, we are not persuaded that had the errors not occurred, every rational juror would necessarily reject the defense and return a verdict of "guilty." Moreover, it would be reasonable to believe one consequence of the improper arguments may have been an increased sentence. The dissent correctly acknowledges the State requested a sentence of only twenty-five to thirty years, but concludes because the sentence actually returned by the jurors was less—twenty-two years—the error was harmless. We believe the dissent's harm analysis is incorrect. The sentence returned by the jurors was near the punishment requested by the State. Moreover, it is inescapable that the prosecutors' erroneous arguments could have caused the jurors to return a greater sentence than that which might have been assessed had the arguments not been made. It is reasonable to believe the jurors could have determined this to be a crime of passion and, on that basis, absent the errors, returned a sentence even lower on the punishment range. Under such circumstances, we cannot find, beyond a reasonable doubt, the error made no contribution to the punishment.

Having sustained point of error four, we need not address appellant's remaining points of error.

Appellant's fourth point of error is sustained and the trial court's judgment is reversed and remanded for new trial.

---

1. During oral argument, defense counsel agreed the errors were not intentional and may have occurred because of each prosecutor's memory of statements contained in police reports which were not introduced into evidence at trial.

CAYCE, Chief Justice, dissenting.

I respectfully dissent because I disagree with the panel's harm analysis. Applying the standards of *Orona v. State*, 791 S.W.2d 125 (Tex.Crim.App.1990) to the facts of this case, and recognizing that the overwhelming evidence of the appellant's guilt is a variable to be calculated in the harmless error analysis, I would conclude beyond a reasonable doubt the improper jury argument by the State did not contribute to the appellant's conviction or punishment.

As the panel readily acknowledges, the State did not intentionally attempt to taint the trial process with the improper argument. On two separate occasions the State made an inadvertent reference to a purported statement made by the appellant which showed that the offense was intentional. On cross-examination, the appellant testified that he did not remember making the statement. I agree with the panel that, while there may not be legally sufficient evidence of the specific statement in the record, there is more than sufficient evidence to support the jury's finding of intent. In my view, however, the State's comments did not contribute to this finding. Given the overwhelming evidence of appellant's guilt, no rational juror would have accepted the appellant's "weak" defense of accident and returned a "not guilty" verdict in the absence of the comments.

Furthermore, when defense counsel objected to the State's comment the second time it was made, the trial court sustained the objection and instructed the jury to disregard the argument. Since the comment went to an element of the offense which was overwhelmingly established by the entire record, the probable impact of the repeated error, if any, was minimal, particularly when the jury was specifically instructed to disregard the comment.

Moreover, I do not agree with the panel's conclusion that a reasonable consequence of the improper arguments may have been to increase the appellant's punishment. The

jury assessed punishment at twenty-two years. This is at the lower end of the punishment range and less than the twenty-five to thirty years the prosecutor requested. The panel points to no factors that would justify the assessment of a lighter sentence for a crime of this nature than that which the jury awarded. Even if the jury could have determined this to be a "crime of passion," the sentence actually returned by the jurors would squarely fit the crime.

While I do not condone the prosecutors' conduct in this case, I believe the probable collateral implications of their unintentional comments were harmless. The errors did not, in my opinion, prejudice the jurors' decision-making process; they were able to properly apply the law to the facts in order to reach a verdict. *See Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). I would, therefore, hold the improper argument harmless beyond a reasonable doubt and overrule appellant's fourth point of error.