**Robert Earl DENTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 0720–95.

Court of Criminal Appeals of Texas.

April 17, 1996.

Larry M. Moore, Fort Worth, for appellant.

Sylvia Mandel, Assist. DA, Fort Worth, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

Appellant was convicted of murder. The Fort Worth Court of Appeals reversed the conviction and remanded the cause for a new trial. *Denton v. State*, 896 S.W.2d 580, 586 (Tex.App.—Fort Worth 1995). The State filed a petition for discretionary review which raised three questions for review, all of which involve the Court of Appeals' treatment of appellant's claim relating to the State's jury arguments at guilt-innocence. We grant ground one of the State's petition for discretionary review and remand the cause to the Second Court of Appeals to conduct another Tex.R.App.Proc. 81(b)(2) harm analysis.[1]

The State alleged appellant intentionally and knowingly killed the victim. Appellant claimed the killing was accidental. During closing arguments, the prosecutor made two arguments which were unsupported by the evidence and which, according to the Court of Appeals, "if believed, would conclusively show the shooting was not accidental." *Denton*, 896 S.W.2d at 583. The trial court overruled appellant's objection to the first argument. The trial court sustained appellant's objection to the second argument and instructed the jury to disregard it. Appellant did not move for a mistrial.

The Court of Appeals decided "the cumulative effect of the prosecutors' repeated references to evidence outside the record on an issue vital to the defense could not have been cured by an instruction to disregard in the second instance, particularly where defense counsel's objection to the first instance where the offending remark was made was overruled by the trial court." *Denton*, 896 S.W.2d at 585. After discussing the *Harris v. State* factors, the Court of Appeals concluded it could not determine beyond a reasonable doubt that the jurors were not swayed by the State's argument. See *Harris v. State*, 790 S.W.2d 568, 584–89 (Tex.Cr. App.1989). In conducting its harm analysis, the Court of Appeals stated it was "not persuaded that had the errors not occurred,

every rational juror would necessarily reject the defense and return a verdict of 'guilty.' " *Denton*, 896 S.W.2d at 586. In its petition for discretionary review, the State particularly takes issue with that statement and claims the Court of Appeals misapplied Tex.R.App. Proc. 81(b)(2).

■ This Court applies a deferential standard in reviewing intermediate appellate courts' Rule 81(b)(2) determinations. This Court determines whether the intermediate appellate courts applied the correct legal standard and considered the relevant factors. See *Harris*, 790 S.W.2d at 584–89. When the intermediate appellate courts apply the correct legal standard and consider the relevant factors, this Court generally does not substitute its judgment for theirs on Rule 81(b)(2) issues. In this case, we hold the Court of Appeals misapplied the legal standard and also erred by failing to consider other evidence in the record bearing on the issue of appellant's intent.

■ The applicable legal standard is "whether, in light of the record as a whole, there is a reasonable possibility the argument[s] complained of might have contributed to appellant's conviction or punishment." *Orona v. State*, 791 S.W.2d 125, 128 (Tex.Cr. App.1990). The Court of Appeals' statement that it was "not persuaded that had the errors not occurred, every rational juror would necessarily reject the defense and return a verdict of 'guilty' " is not consistent with this standard.

■ In addition, the Court of Appeals seemed to rely almost entirely on the fact the erroneous jury arguments concerned "a critical issue in the case." *Denton*, 896 S.W.2d at 586. However, the Court of Appeals failed to consider other relevant factors such as the overwhelming evidence of guilt on the issue of appellant's intent and its "interaction with the other evidence." See *Harris*, 790 S.W.2d at 586 (the impact of the error cannot be properly evaluated without examining its interaction with the other evidence) and at 588 (overwhelming evidence can be a factor to be

---

1. We dismiss grounds two and three of the State's petition for discretionary review without

prejudice.

considered in applying Rule 81(b)(2)) and at 604 (appellate court should calculate as best it can probable impact of the error on jurors in light of other evidence; "overwhelming evidence" may or may not play a role, depending on the particular error and the facts of the case and evidence adduced) (Clinton, J., dissenting on motion for rehearing).

For example, not long before the offense occurred, appellant called the victim's wife and told her that he caught the victim with appellant's wife and that appellant was going to kill the victim. Appellant had been to his wife's home, left, and returned to his wife's home with a shotgun where he killed the victim. The evidence further shows the victim died from a shotgun wound to the *chest*. This evidence was undisputed. At trial, appellant testified the shotgun "went off" when he and his wife were struggling over it and "she jerked it *down.*" *Denton*, 896 S.W.2d at 583 (Emphasis Supplied). Thus, appellant claimed the victim was accidentally shot in the chest while the shotgun was pointed down.

Based on the foregoing, we vacate the judgment of the Second Court of Appeals and remand the cause to that Court for further proceedings consistent with this opinion.

CLINTON, J., dissents.

MANSFIELD, Judge, concurring.

I join the opinion of the Court and agree this cause should be remanded to the court of appeals to conduct another harm analysis under Texas Rule of Appellate Procedure 81(b)(2). I write separately to reexamine our holding in *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989), in which this Court provided guidance as to how such harm analyses should be conducted.

Texas Rule of Appellate Procedure 81(b)(2), the harmless error rule, is the Texas statutory equivalent of the harmless error rule established by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for addressing constitutional errors. Rule 81(b)(2) requires the reviewing court to re-verse a criminal conviction where the record below reveals error in the proceedings "*unless* the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

"As noted, Rule 81(b)2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. Irrespective of the focus of the inquiry, it is impossible to gauge the significance of the error apart from the remaining properly admitted evidence. This approach obviously implicates a review of the evidence, but the concern is solely to trace the impact of the error." *Harris*, 790 S.W.2d at 585–586.

Neither this Court nor the United States Supreme Court has established a coherent and consistent standard to determine whether or not an error is harmless. Logically, the best standard is the overwhelming evidence standard. That is, if the record shows overwhelming evidence of guilt (disregarding erroneously admitted evidence, if any) then any error is, by definition, harmless. The Supreme Court utilized the overwhelming evidence standard in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Yet, as pointed out by the majority in *Harris, supra*, at 586, the Supreme Court did not follow the overwhelming evidence standard in *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The Supreme Court, in effect, held that harmless error had to be measured on a case-by-case basis, rather than by reference to a formula or precise rule, and reiterated its holding in *Chapman* that "the question, however, is not whether the legally admitted evidence was sufficient to support the death sentence, which we assume it was, but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Satterwhite*, 486 U.S. at 258–59, 108 S.Ct. at 1798, citing *Chapman*,

386 U.S. at 24, 87 S.Ct. at 828.[1]

In my opinion, an error is harmless beyond a reasonable doubt if the record shows there is no reasonable possibility that the error contributed to the finding of guilt or the assessment of punishment. If the record shows the evidence of guilt is so overwhelming that no rational trier of fact would have voted for a verdict other than one of guilty, or, in the case of error affecting punishment, would have answered the punishment issues differently, then the no reasonable possibility standard is met. This standard assures that a criminal conviction in Texas will not be reversed for minor procedural trial errors where there is absolutely no question as to the defendant's guilt. At the same time, this strict standard will assure that any criminal trial in Texas will be an essentially fair trial.[2] After all, the purpose of the harmless error rule is to avoid setting aside convictions for errors that have little, if any, likelihood of having affected the result of the trial, because the reversal of a conviction entails substantial social costs. *Chapman*, 386 U.S. at 21–23, 87 S.Ct. at 827.

I disagree with the *Harris* majority's assertion that "a reviewing court, in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process leading to the conviction." *Harris, supra,* at 587. It is my opinion that both are equally important. A procedurally perfect trial resulting in an unjust conviction is just as constitutionally disturbing as a trial with substantive procedural errors, regardless of its outcome. Rule 81(b)(2) was formulated to strike a balance between those who strive for "procedural perfection" and those who strive for the "right result" regardless of the procedural rights of the accused.[3]

Accordingly, I would vacate the judgment of the court of appeals and remand the cause to that court to conduct a second harmless error analysis employing the standard delineated above.

With these comments I join the opinion of the Court.

BAIRD, Judge, dissenting.

The majority vacates the judgment of the Court of Appeals based upon that court's harmless error analysis under Tex.R.App.P. 81(b)(2). Because the majority remands this case instead of clarifying a confusing area of our jurisprudence, I respectfully dissent.

I.

Our principal role as the Court of last resort is to

... dispel any confusion generated in the past by our own case law, to reconcile settled differences between the various courts of appeals, and to promote the fair administration of justice by trial and appellate courts throughout Texas.

*Arcila v. State,* 834 S.W.2d 357, 361 (Tex.Cr. App.1992). Unless we grant review in these circumstances we fail to fulfill our duty as the Court of last resort in criminal cases. *See, Mireles v. State,* 901 S.W.2d 458, 461 (Tex.Cr.App.1995); *and, Cofield v. State,* 891 S.W.2d 952, 957 (Tex.Cr.App.1994). For the following reasons, I believe the instant case presents such circumstances.

---

1. A review of *Satterwhite,* which involved *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 error affecting punishment, shows that a reversal would have been mandated under the overwhelming evidence standard. " 'Sufficient evidence' is not overwhelming evidence." See *Satterwhite,* 486 U.S. at 259–60, 108 S.Ct. at 1799.

2. So-called "structural errors" would still have to be addressed on a case-by-case basis, with the presence of overwhelming evidence of guilt being but one factor to be taken into account in determining if a structural error is harmless.

3. In *Harris,* this Court, unwisely in my opinion, held that, in determining whether a particular error is harmless, a reviewing court should determine whether declaring that error harmless would encourage the State to repeat it with impunity. *Harris, supra,* at 587. If the error is truly harmless, it makes little sense to punish the people of Texas by rewarding the appellant with a reversal of his conviction. Prosecutors who repeatedly and intentionally disregard the law are subject to discipline under the State Bar Rules, as well as by the courts under their powers of contempt.

## II.

In *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Cr.App.1989), we noted our past failure to articulate a coherent standard for determining when an error is harmless. To remedy this the Court attempted to establish a method for performing a proper harmless error analysis. In so doing, we stated that the reviewing court should focus primarily on the integrity of the process leading to the conviction or punishment as opposed to focusing on the outcome of those proceedings. *Id.*, 790 S.W.2d at 587. To properly conduct a harm analysis the reviewing court should

> ... examine [1] the source of the error, [2] the nature of the error, [3] whether or to what extent it was emphasized by the State, and [4] its probable collateral implications. Further, [5] the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine [6] whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on the weight of the other evidence of guilt [or punishment], but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, *no matter how overwhelming it might have been*, the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

*Id.*, 790 S.W.2d at 587–588.[1] In conducting this analysis the reviewing court should first isolate the error and all its effects, using the aforementioned considerations and any other considerations suggested by the facts of the individual case. *Id.*, 790 S.W.2d at 588. Secondly, the court should ask whether a rational trier of fact might have reached a different result if the error had not occurred and its effects had not resulted. *Ibid.* In this context, the *Harris* Court stated that an appellate court should *not* determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt or punishment because such an analysis is *not* finding whether the error affected the verdict. *Harris*, 790 S.W.2d at 587.

While apparently forbidding a reviewing court from determining harm simply from examining whether there exists overwhelming evidence, the Court nevertheless stated:

> [T]he appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence. As a practical matter, this is a distinction without a difference. In both instances *the presence of overwhelming evidence of guilt plays a determinative role in resolving the issue. Nevertheless, in making the analysis the predominant concern must be the error.*

*Harris*, 790 S.W.2d at 587. Therefore, *Harris* is internally inconsistent: on the one hand it requires isolating the error and all its effects and, on the other hand, considering the presence of overwhelming evidence as determinative when deciding whether the error was harmless.[2]

In *Orona v. State*, 791 S.W.2d 125 (Tex.Cr.App.1990), the Court attempted to clarify *Harris* and stated:

> ... To determine whether the error is harmless, we must calculate as much as possible the probable impact of the error

---

1. All emphasis is supplied unless otherwise indicated.

2. Perhaps this internal inconsistency explains why *Harris* garnered only a bare majority. The precedential value of *Harris* is further undermined when we consider that two members of the majority later indicated a lack of confidence

that the overwhelming evidence/outcome determinative approach to harmless error jurisprudence had been abandoned by the United States Supreme Court. *Shelby v. State*, 819 S.W.2d 544, 551 (Tex.Cr.App.1991) (Campbell and White, JJ., concurring).

on the jury in light of the existence of the other evidence. In the context of a harmless error analysis, it is important to note that "other evidence" is the entire record. *Orona,* 791 S.W.2d at 130 (internal citations omitted). When conducting a harmless error analysis "[i]t is the effect of the error and *not* the existence of overwhelming evidence or the lack thereof that dictates our judgment." *Ibid.* Whether the evidence is overwhelming is only a factor to be considered in the *Harris* test and is not dispositive. *Ibid.* Yet *Orona* created more problems than it solved, because while paying "lip service" to *Harris,* the Court concluded the error was harmless after applying the *Harris* factors and *recognizing overwhelming evidence of guilt.* In short, *Orona* suffered from the same malady as *Harris:* while decrying the reliance on overwhelming evidence the court utilized that factor in holding the error harmless. Therefore, *Orona* created the impression that overwhelming evidence is the only factor that need be applied in conducting a harmless error analysis. This, most certainly, was not the holding of *Harris.*

While both *Harris* and *Orona* attempted to clarify the application of the harmless error rule, they only succeeded in creating confusion and inconsistencies which are exemplified by the opinions from this Court and the courts of appeals.

### A.

In *Hughes v. State,* 878 S.W.2d 142 (Tex. Cr.App.1992) (op'n on reh'g), the defendant was convicted of capital murder and sentenced to death. On appeal, the defendant contended the trial judge erred in admitting evidence of a prior deferred adjudication for aggravated assault. We held the error was harmless due to the admission of the defendant's prior criminal record for sexual assault. *Hughes,* 878 S.W.2d at 156. In reaching this conclusion we did not conduct a *Harris* analysis, but instead stated:

... However, the incremental harm of the admission of the defendant's deferred adjudication for the aggravated assault is negligible when compared to the admission of the defendant's deferred adjudication for aggravated sexual assault with a child.

*Ibid.* In short, the Court while purporting to perform a harmless error analysis considered only the overwhelming evidence factor to hold that the error was harmless. However, in *Garcia v. State,* 919 S.W.2d 370 (Tex.Cr. App. 1994), another capital murder case, we did not limit our analysis to the overwhelming evidence factor but instead examined each *Harris* factor. *Garcia,* 919 S.W.2d at 378–379.

### B.

In *Cuba v. State,* 905 S.W.2d 729 (Tex. App.—Texarkana 1995, no pet.), the Court of Appeals applied a harmless error analysis to review the introduction of impeachment evidence. The *Cuba* court, while acknowledging *Harris,* based its analysis on the existence of overwhelming evidence.

... Although a correct result is not proof of harmless error, the error can be harmless if overwhelming evidence dissipates its effect on the jury function in determining the facts so that it did not contribute to the verdict.

*Cuba,* 905 S.W.2d at 734. The court held:

... We conclude that the *overwhelming evidence supports the conviction* and would have dissipated the effects of any error with respect to the impeachment evidence.

*Ibid.*

In *Kelly v. State,* 903 S.W.2d 809 (Tex. App.—Dallas 1995), the Court of Appeals applied a harmless error analysis in reviewing improper jury argument. The Court of Appeals reviewed the *Harris* factors considering "the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications." *Kelly,* 903 S.W.2d at 812. The court further considered the weight each juror might place on the error as well as "whether declaring the error harmless will encourage the State to repeat it with impunity." *Ibid.* The court determined that the error was not harmless, holding that the State had repeated the error with impunity because other courts have declared it harmless. *Ibid.*

## C.

The instant case exemplifies the confusion which dominates this area of the law. *Denton v. State*, 896 S.W.2d 580, 586 (Tex.App.—Fort Worth 1995). The majority of the Court of Appeals conducted a *Harris* analysis and reviewed the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, its probable collateral consequences, how much weight a juror would probably place upon the error, as well as whether declaring the error to be harmless would encourage the State to repeat it with impunity. *Id.*, 896 S.W.2d at 585. The majority held:

> ... we believe it cannot be determined beyond a reasonable doubt the jurors were not swayed by the State's argument. We admit the defense presented was weak; however, we are not persuaded that had the errors not occurred, every rational juror would necessarily reject the defense and return a verdict of "guilty".

*Id.*, 896 S.W.2d at 586.[3] The majority concluded the error was not harmless.

The dissent utilized the overwhelming evidence factor in declaring the error harmless, stating: "... there is more than sufficient evidence to support the jury's finding of intent." *Denton*, 896 S.W.2d at 586. The dissent argued:

> ... Given the overwhelming evidence of appellant's guilt, no rational juror would have accepted the appellant's "weak" defense of accident and returned a "not guilty" verdict in the absence of the comments.

*Ibid.*

## III.

From this discussion, it is readily apparent that there exists a great deal of confusion and inconsistency in both this Court and in the courts of appeals as to how to apply the harmless error analysis required by Rule 81(b)(2). As the Court of last resort in this state it is our duty to dispel that confusion and to reconcile those inconsistencies. Accordingly, I would seize this opportunity to discharge that duty. Unfortunately, the majority is unwilling to assume its leadership role and squanders this excellent opportunity to clarify this important area of jurisprudence. The result of this lack of will is to force the Court of Appeals to wallow in a swamp of confusing and conflicting jurisprudence. Surely we can do better; certainly the Court of Appeals deserves better.

OVERSTREET, Judge, dissenting.

Appellant was convicted of murder. The court of appeals reversed in *Denton v. State*, 896 S.W.2d 580 (Tex.App.—Fort Worth 1995). The State filed a petition for discretionary review raising three questions for review, all of which involve the court of appeals' treatment of appellant's claim about the State's jury arguments at guilt/innocence. During the State's closing argument, the prosecutor twice included comments of evidence that were outside the record. The defense's objection to the first comment was overruled, but the second objection was sustained and the court instructed the jury to disregard the statement.

The court of appeals found and then held that the statements were in fact outside the record. The court of appeals held that they could not conclude that such error was harmless beyond a reasonable doubt. Tex.R.App. Pro. 81(b)(2). It is clear from their opinion that the court of appeals concluded that this error was not harmless only after considering the factors enunciated in *Harris*. *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989). In addition to examining the *Harris* factors while conducting its harm analysis, the court of appeals also stated that it was "not persuaded that had the errors not occurred, every rational juror would necessarily reject the defense and return a verdict of 'guilty'." *Denton v. State*, 896 S.W.2d 580. The majority found that the court of appeals failed to apply the correct legal standard by adding this additional language and by failing to

---

3. Both Judges McCormick and Overstreet criticize the majority's use of this language. It is readily apparent the majority carefully chose this language in their attempt to follow the *Harris* methodology which asks "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." 790 S.W.2d at 588. The Court of Appeals' majority should not be criticized for making every effort to apply our precedent.

consider other evidence of appellant's intent. I disagree. I acknowledge that this comment was unnecessary to the harm analysis, but it is evident from the remainder of the court's rationale that a detailed and correct harm analysis under *Harris,* was performed by the court of appeals. The addition of this unnecessary element did not negate the fact that a thorough harm analysis was performed by the court of appeals in accordance with *Harris.* Further, there is no requirement for the court of appeals to consider additional evidence if any regarding appellant's intent once they were convinced that they could not find, beyond a reasonable doubt, that the error made no contribution to the punishment.

This Court has held that we would not substitute our own judgment for that of the court of appeals, as long as the court of appeals impartially applies the correct law and the correct legal standard. *Arcila v. State,* 834 S.W.2d 357 (Tex.Cr.App.1992). This is the case even if our decision might have been different. Our job is simply to "dispel any confusion generated in the past by our own case law, to reconcile settled differences between the various courts of appeal, and to promote fair administration of justice by trial and appellate courts throughout Texas." *Arcila,* supra at 361. The court of appeals did fairly conduct its harm analysis using both the proper law and standard, and its conclusion is supported by the record.

For these reasons I disagree with the majority's decision to remand this cause to the Second Court of Appeals for a second harm analysis. I instead would refuse the State's petition for discretionary review with a disclaimer regarding the unnecessary language used by the court of appeals.

MALONEY, J., joins.