# NO. 12-09-00156-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARL LEONARD LIVELY,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A jury found Appellant, Carl Leonard Lively, guilty of aggravated robbery. The trial court assessed a life sentence to be served consecutively to a Henderson County conviction. In his first issue, Appellant complains the trial court erred in allowing the admission of evidence of extraneous offenses. In his second issue, he contends the prosecutor made impermissible arguments to the jury that emphasized the evidence of extraneous offenses improperly admitted. We affirm.

#### BACKGROUND

At around 5:00 p.m. on May 30, 2007, a man walked into the Dollar General Store in Bullard and asked Tiffany Stokes, the cashier, about buying cell phone minutes. She went to the cash register, but while she was completing the sale, the man pointed a pistol at her. The man said, "[O]pen it, open it, and just be quiet." He held the gun at his waist level but pointed it up at her. She gave him all the money in the cash register. The robber then told her to turn around and walk to the back of the store. He ordered her not to turn around or try to see what he was driving or he would shoot her.

Stokes described the robber as a slender white male with a mustache. He wore a dark

long sleeved shirt, dark pants, work boots, sunglasses, a dark handkerchief around his neck, and a blue or black baseball cap with white lettering on it. She noticed that he had gray hair sticking out from under his baseball cap. Five months later, Stokes quickly identified Appellant in a photo lineup.

Jordan Goodman testified that he left the Dollar General Store at about the same time as the robber entered. He testified that when he left the store, the only vehicle in the parking lot, other than his own, was a dark blue Tahoe.

Allen In testified that at 4:45 p.m. on July 19, 2007, a thin, white male walked into his liquor store in Marshall, Texas, pointed a pistol at him, and told him to empty the cash register. The robber held the gun around his mid-section with the barrel pointing up at In. After he took the money, he told In to walk to the back of the store. Immediately after the robber left the building, In grabbed his .40 caliber Hi-Point pistol from under the counter. He ran outside in time to see the robber still in the parking lot in a dark blue Tahoe. In fired four shots at the Tahoe as it sped away. He said the robber wore a baseball cap, and that he could see the robber had gray hair.

On October 30, 2007, Gun Barrel City officers arrested Appellant following the investigation of a traffic accident involving Appellant. His dark blue Tahoe was impounded. The officers found two bullet holes in the vehicle's exterior. They recovered a spent bullet from its interior. Testing established that it had been fired from In's .40 caliber pistol.

At trial, both Stokes and In identified Appellant as the person who robbed them.

## EXTRANEOUS OFFENSES

In his first issue, Appellant contends the trial court erred in admitting evidence of the Marshall liquor store robbery, events surrounding his arrest at Gun Barrel City, and mail indicating that Appellant had written checks that had not been paid. Appellant argues that, despite the trial court's limiting instructions, the evidence gave the jury the impression that he had committed multiple robberies. He also insists that, even if the challenged evidence had some purpose other than proof of character and that the charged conduct conformed to that character, its probative value was substantially outweighed by the danger of unfair prejudice from its admission.

**Standard of Review**

The trial court's evidentiary rulings are reviewed for abuse of discretion. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, the ruling must be upheld. *Id*. Appellate courts will uphold a trial court's ruling on the admissibility of evidence as long as the trial court's ruling was at least within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

**Applicable Law**

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, evidence of other crimes, wrongs, or acts may be admissible for other purposes, such as proof of identity. *Id*. An extraneous offense may be admissible to show identity only when identity is at issue. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). When an extraneous offense is offered to prove identity, the common characteristics or the device used in each offense must be so unusual and distinctive as to be like a "signature." *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996).

Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." TEX. R. EVID. 403. Therefore, even if relevant on the issue of identity, the extraneous offense evidence may still be inadmissible. Extraneous offense evidence is admissible under both rules 403 and 404(b) if the evidence satisfies a two part test: (1) whether the extraneous offense evidence is relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character, and (2) whether the probative value of the evidence is not substantially outweighed by unfair prejudice. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). The determination of whether the probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice requires the consideration of four factors: (1) how compellingly the extraneous offense evidence serves to make more or less probable a fact of consequence, (2) the potential of the evidence to impress the jury in an irrational and indelible way, (3) the time needed to develop the evidence of extraneous

3

misconduct, and (4) the degree of the proponent's need for such evidence. *Montgomery*, 810 S.W.2d at 389-90.

**Discussion**

The only direct evidence the State had connecting Appellant to the offense was his ownership of a dark blue Tahoe and the eyewitness identification of a frightened young woman who probably had less than three minutes to observe him. Appellant, in cross-examination, attempted to show that her identification of Appellant was untrustworthy. In cross-examination of Stokes and the Texas Ranger who prepared the photo lineup, he sought to cast doubt on the reliability of Stokes's identification of Appellant's photograph. Identity was at issue.

The evidence of the Marshall robbery was offered and admitted to show identity. The two robberies occurred within two months. In both, the robber drove a dark blue Tahoe. A robber entered both stores at around 5:00 p.m. In both instances, he wore a baseball cap and a dark bandana. He held the pistol low around his waist with the muzzle pointed up at the victim. In each case, after he got the money, the robber ordered the cashier or store owner to walk to the back of the store. Both robberies were committed by a thin, white male with gray hair.

Appellant contends that even if the evidence of the Marshall robbery was relevant, the danger of unfair prejudice in its admission substantially outweighed its probative value.

In making this determination under rule 403, the court must consider first "how compellingly the evidence of extraneous misconduct serves to make more or less probable a fact of consequence." *Montgomery*, 180 S.W.2d at 389. This is often a function of similarity of the extraneous misconduct to the charged offense and the strength of the state's proof that the defendant committed the extraneous misconduct. *Id*. at 390. Here, the two offenses shared multiple distinctive characteristics that identified Appellant as the perpetrator of both. In's identification of Appellant as the Marshall liquor store robber coupled with the discovery in Appellant's Tahoe of a bullet fired from In's pistol showed beyond a reasonable doubt that Appellant committed the extraneous offense. Given the similar distinctive characteristics shared by both robberies, In's identification of Appellant as the Marshall robber provided compelling evidence of Appellant's identity as the robber of the Bullard Dollar General.

We do not believe the evidence of the Marshall robbery had the potential to impress the jury in an irrational way. The evidence of the extraneous offense had no adverse effect upon

4

Appellant "beyond tending to prove the fact or issue that justified its admission into evidence." *See Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). Moreover, the court properly limited the jury's consideration of the evidence of the Marshall robbery to the issue for which it was admitted. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994).

The time the State needed in developing the evidence of the extraneous misconduct, the third *Montgomery* factor, weighs against its admission, and the State concedes as much. Twenty-seven percent of the State's direct examination was devoted to proof of the Marshall robbery. The evidence was needed and inherently probative. But the expenditure of so much time proving the extraneous offense risked diverting the jury's attention from the charged offense.

The fourth *Montgomery* factor addresses the state's need for the evidence and requires answers to the following questions: (1) Does the state have other evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? (2) If so, how strong is that evidence? And (3) is the fact of consequence related to an issue that is in dispute? *Montgomery*, 810 S.W.2d at 390. In this case, the only direct evidence the State possessed that Appellant was the robber was the eyewitness testimony of a frightened nineteen year old woman who had possibly three minutes to observe him. Although that was sufficient proof, its reliability could easily be undermined. The State needed the evidence.

Despite the inordinate time involved in proving the Marshall robbery, our analysis of the four *Montgomery* factors leads us to conclude that the probative value of the evidence of the Marshall robbery was not substantially outweighed by the danger of unfair prejudice. The trial court's ruling was well "within the zone of reasonable disagreement." The trial court did not abuse its discretion in admitting the evidence related to the Marshall robbery.

In his first issue, Appellant also argues that the trial court erred in admitting Chief Boswell's testimony regarding the facts and circumstances surrounding Appellant's arrest in Gun Barrel City. At trial, Appellant raised an objection that the evidence of bullet holes in his Tahoe was not relevant. On appeal, Appellant complains the testimony was inadmissible under rules 403 and 404(b). Appellant's trial objection must comport with the issue raised on appeal. *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). Because it does not, no error was preserved.

Next, Appellant insists that Sergeant Griffin's testimony that he had been investigating similar robberies prior to preparing a photo lineup for the Marshall robbery was inadmissible propensity evidence under rules 403 and 404(b). On direct examination Sergeant Griffin testified, as follows:

> I had been contacted by other agencies that were having similar robberies. We put out what kind of vehicle we were looking for in our robbery, and talking with other detectives that had the same kind of robberies. I got a call from a detective out of Smith County [who] advised me –
>
> Q: Let me ask you this: With that detective, when you got that information, did you, at that time, after getting that information, did you put together a photo line-up?
>
> A: Yes. Soon as I got a name of a suspect they had that possibly could be our robber, I took the name –

Evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct by the defendant. *McKay v. State*, 707 S.W.2d 23, 31-32 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871, 107 S. Ct. 239, 93 L. Ed. 2d 164 (1986). Since the challenged testimony did not establish prior criminal conduct by Appellant, it was not improper extraneous offense evidence.

Finally, Appellant insists that the trial court erred in admitting testimony regarding the discovery after his arrest of notices from the Anderson County District Attorney regarding checks Appellant had written but that had not been paid. Appellant's trial objection was overruled. Later in the trial, however, when the documents were introduced, Appellant's counsel stated, "Without objection, Your Honor." The benefit of an objection made outside the jury's presence is lost if, when the evidence is offered before the jury, the opponent states, "[N]o objection." *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992). Moreover, the admission of inadmissible evidence is held harmless by the admission of evidence without objection that proves the same fact. *Hammons v. State*, 856 S.W.2d 797, 802 (Tex. App.–Fort Worth 1993, pet. ref'd). No error is preserved.

Appellant's first issue is overruled.


**J**URY **A**RGUMENT

In his second issue, Appellant complains that the prosecutor's argument during the guilt-

innocence phase of the trial emphasized the extraneous offense evidence improperly admitted and was so inflammatory as to deny him a fair trial.

The applicable standard is whether, in the light of the record as a whole, there is a reasonable possibility the improper argument contributed to appellant's conviction. *Denton v. State*, 920 S.W.2d 311, 312 (Tex. Crim. App. 1996).

Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *Franklin v. State*, 693 S.W.2d 420, 429 (Tex. Crim. App. 1985).

In the absence of an objection to jury argument and an adverse ruling, nothing is presented for review. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). However, if the prosecutor's argument is so extreme and inflammatory as to deprive the appellant of a fair trial, reversal is required. *See, e.g., Boyde v. State*, 513 S.W.2d 588, 590-93 (Tex. Crim. App. 1974).

Appellant describes the State's argument as so inflammatory as to require reversal despite the absence of any objection at trial. Appellant complains particularly that the prosecutor devoted much of his argument to the extraneous offense evidence, which Appellant contends was improperly admitted. However, we have held that there was no error in the admission of evidence related to the Marshall robbery. A prosecutor is permitted to refer to the evidence and make reasonable deductions from it. We have reviewed the prosecutor's argument. It was not so egregious as to deny Appellant a fair trial as in *Boyde*. In the absence of any trial objection, no error is preserved. Appellant's second issue is overruled.

## DISPOSITION

The judgment is ***affirmed***.

### BILL BASS
Justice

Opinion delivered June 30, 2010.
*Panel consisted of Griffith, J., Hoyle, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

7