# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

-----------------------------------------------------------------------

FILED

Dec. 16, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

KENNETH DALE NANCE,  )
           )  HENRY CHANCERY
  Plaintiff\Appellant   )
v.           )
           )
TINA LOUISE NANCE,   )  Appeal No. 02A01-9603-CH-00042
           )
  Defendant\Appellee   )


APPEAL FROM THE CHANCERY COURT OF HENRY COUNTY
AT PARIS, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR


W. BROWN HAWLEY, II    THOMAS V. VENTIMIGLIA
TERESA McCAIG MARSHALL  117 East Wood Street
308 W. Washington St.    Paris, TN 38242
Paris, TN 38242     Attorney for Appellee
Attorneys for Appellant


AFFIRMED

         WILLIAM H. INMAN, SENIOR JUDGE

CONCUR:

ALAN E. HIGHERS, JUDGE

HOLLY LILLARD, JUDGE

**O P I N I O N**

Custody of the five-year old son of these parties was awarded to his mother, the propriety of which the appellant-father questions. Our review of the findings of the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. CODE ANN. § 50-6-225(3)(2). *Stone v. City of McMinnville,* 896 S.W.2d 584 (Tenn. 1991). We cannot substitute our judgment for that of the trial judge, and we are not positioned to evaluate the credibility of the parties or their witnesses. *Walls v. Magnolia Truck Lines,* 622 S.W.2d 526 (Tenn. 1981).

The mother was 17 and pregnant when she and the appellant, ten years older, were married. Their post-marriage years have been unhappy ones, exacerbated beyond description here by the mother's confessed adultery with Derrick Poole, to whom she is now married, and by whom she became pregnant while yet married to the appellant.

Numerous witnesses, including family members, testified about the respective habits, conduct, and character of the parties. We do not believe it would be profitable to memorialize this testimony because much of it was advocative except for the admitted gross misconduct of the appellee. The thrust of the evidence revealed an abundance of mutual fault, but the lascivious conduct of the mother eventually destroyed the marriage.

Her then-paramour, now husband, Derrick Poole, came under close scrutiny respecting his affinity for recreational drug use. The five-year old son related to an experienced officer the observation of Poole apparently manufacturing crack cocaine. The testimony of the officer was disallowed because hearsay, and the appellant complains of this fact, more or less on practical, common-sense grounds. But to allow the officer to derive an opinion based on his conversation with the boy obviously cannot be allowed and we need not belabor the point. There was other evidence offered in substantial derogation of Poole's character, all of which the Chancellor made plain that he fully considered.

2

### The Chancellor filed an excellent opinion, a portion of which we reproduce:

"The goal of every custody proceeding is to place the child in an environment that will best serve his or her physical and emotional needs. *Lentz v. Lentz,* 717 S.W.2d 876, 877 (Tenn. 1986); *Bah v. Bah,* 668 S.W.2d 663, 665-666 (Tenn. Ct. App. 1983). The proceeding is not for the purpose of rewarding or punishing a parent for past conduct but rather to promote the child's best interests. *Sutherland v. Sutherland,* 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991); *Barnhill v. Barnhill,* 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). Thus, the child's interests are paramount, *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983), and the parents' interests are secondary. *Griffin v. Stone,* 834 S.W.2d 300, 302 (Tenn. Ct. App. 1982); *Neely v. Neely,* 737 S.W.2d 539, 542 (Tenn. Ct. App. 1987). 'The goal of facilitating the child's best interests is certainly a noble one, but the notion that courts can ever know with any certainty what will truly be in a given child's best interest is perhaps unrealistic.' *Taylor v. Taylor,* 849 S.W.2d 319, 326 (Tenn. 1993).

In *Bevins v. Bevins,* 383 S.W.2d 780 (1964), the court observed:

The real matter to be considered is what is the best thing to do with these children that they may be left in a home where they are nurtured, appreciated and where the environment is such that is conducive not only to the physical welfare of the child, but to its emotional and moral welfare, and where it can have the instructions from those who have control over it to inspire it to activities so as to develop a personality prepared for a life of service, and to successfully compete in the society which the child faces when an adult.

383 S.W.2d at 783.

The paramount concern in child custody cases is the welfare and best interest of the child. *Bah v. Bah,* 668 S.W.2d 663 (Tenn. App. 1983). In determining where the best interest of a child lies when awarding custody, the court considers many factors of which a nonexclusive list is found in the *Bah* opinion, 668 S.W.2d at 666. Those factors include: (1) the age, habits, mental and emotional makeup of the child and those parties competing for custody; (2) the education and experience of those seeking to raise the child; (3) their character and propensities as evidenced by their past conduct; (4) the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; (5) the availability and extent of third party support; (6) the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and (7) where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

In *Bah v. Bah,* 668 S.W.2d 663, 666 (Tenn. App. 1983), the court stated:

This court believes that the so-called "tender years doctrine" is a factor -- but only one factor -- to be considered in the overall determination of what is in the best interests of the child.

We adopt what we believe is a common sense approach to custody, on[e] which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish,* 494 S.W.2d 145, 151 (Tenn. App. 1972. There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith,* 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach: "Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others." (Citations omitted).

To the extent the "tender years" doctrine has continued efficacy it is simply one of many factors to be considered in determining custody, not an unyielding rule of law. The only rigid principle is and must be that the best interests of the child are paramount in any custody detrmination.

. . . . . . . . . .

3

Times have changed. Many mothers now work, either by necessity or choice, and no longer assume the primary nurturing role for small children. We believe the "presumption of tender years" exposed [sic] in *Weaver* [261 S.W.2d 145, 148 (Tenn. 1953)] is no substitute for an individualized investigation involving custody in every case. Such factors as the warmth, consistency, and continuity of the relationship between parent and child and not the sex of the parent actually govern a child's best interest. These things can be provided by the father as well as the mother.

668 S.W.2d at 666.

T.C.A. § 36-6-101(d) permits the courts to consider the "tender years doctrine" in examining questions of custody. *Taylor v. Taylor,* 849 S.W.2d 319, 325 (Tenn. 1993). "The legislative history of the provision in subsection (d) indicates that it was intended to codify case law's 'tender years doctrine',". *Id.* at 325, footnote 6. *Weaver v. Weaver,* 261 S.W.2d 145, 148, (1953), sets forth the tender years doctrine in these terms: "A mother, except in extaordinary circumstances, should be with her child of tender years. Normally, such a child will not be taken away from its mother unless it is demonstrated that to leave the child with its mother would jeopardize its welfare, both in a physical and in a moral sense." However, the tender years doctrine is not controlling but is simply an element to be considered by the court in determining custody. *Shelby v. Shelby,* 696 S.W.2d 360, 361 (Tenn. App. 1985).

In the instant case, the parties' child is five (5) years old, one of many factors the Court is considering pursuant to Tennessee Law.

Sexual infidelity or indiscretion does not *ipso facto* disqualify a parent from being awarded custody; however, when the parent's sexual activities or indiscretion involve neglect of the minor child, such neglect may be considered in relation to the best interest of the minor child. *Sutherland v. Sutherland,* 831 S.W.2d 283, 268 [286] (Tenn. App. 1991).

There are various factors to consider in custody decisions as set out in T.C.A. § 36-6-105:

Section 36-6-105 **Child Custody.** In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

4

**CONCLUSION**

It is apparent that both parties love their child and that the child loves both parents. It is further apparent that both parents are fit and competent parents to have custody of their child.

The Court finds that during the course of the parties' marriage the mother was the primary caretaker of the child although it appears the father has also contributed significantly to the rearing of the child. It is evident from the testimony that both parties have certain negative traits but also have some very positive traits. Unfortunately, the parties have themselves elected to dissolve their marriage and this election results in the fact that, under the circumstances, one parent will of necessity be required to be the primary custodian of the child. The Court finds that the father has an ongoing proclivity to indulge in alcohol to excess. His present work schedule prevents access to the child in the afternoon and evenings. While acknowledging the acts of infidelity of the mother, her conduct does not appear to have resulted in any neglect of the parties' child. Considering all of the factors contained in the legal authorities hereinabove cited, and considering the respective environments in which the child will be reared, the Court is of the opinion that the best interest of the child will be served by placement with the mother."

We are unable to find that the evidence preponderates against the judgment, which is affirmed at the cost of the appellant. The case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Alan E. Highers, Judge


_____
Holly Lillard, Judge

5

# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE
-----------------------------------------------------------------------

| | | |
|---|---|---|
| **KENNETH DALE NANCE,** | ) | |
| | ) | HENRY CHANCERY |
| Plaintiff/Appellant | ) | |
| v. | ) | |
| | ) | |
| **TINA LOUISE NANCE,** | ) | Appeal No. 02A01-9603-CH-00042 |
| | ) | |
| Defendant/Appellee | ) | |

_____

## J U D G M E N T

_____


This cause came on to be regularly heard and considered by this Court, and for the reasons stated in the Opinion of this Court, of even date, it is Ordered:


1. The judgment of the trial court is affirmed.

2. Costs of this appeal are taxed against the appellant for which execution may issue if necessary.

3. The case is remanded for all appropriate purposes.


ENTER:


_____
William H. Inman, Senior Judge


_____
Alan E. Highers, Judge


_____
Holly Lillard, Judge